UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

ROY EUGENE HARRIS,                    )
                                      )
          Plaintiff,                  )
                                      )
     vs.                              )     Case No. 2:04CV00073 ERW
                                      )
JIM MOORE, et al.,                    )
                                      )
          Defendants.                 )

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on Defendants Jim Moore, Mary Reardon, James

Gammon, Tom Anderson, Steve Long, Wendy Alexander and Terry Barnes' Motion for Summary

Judgment [doc.#84].

**I.     FACTUAL BACKGROUND[1]**

From November 11, 2003 to April 15, 2004, Plaintiff was incarcerated at the Northeast

Correctional Center ("Northeast") located in Bowling Green, Missouri. Defendant Moore was

Superintendent at Northeast during that time. Northeast staff included Defendant Reardon,

Associate Superintendent, Defendant Tommy Barnhart, Chaplain, and Defendant Alexander,

Mailroom Supervisor.

From April 15, 2004 to November 10, 2005, Plaintiff was incarcerated at the Moberly

Correctional Center ("Moberly") in Moberly, Missouri. Defendant Gammon was Superintendent

of Moberly during that time. Moberly staff included Defendants Anderson and Blattel-Dunseith,

---

[1]The Court's recitation of the facts is taken from Defendant's Statement of
Uncontroverted Material Facts and Plaintiff's Statement of Material Facts, as well as the
responses filed to each.

Associate Superintendents, and Defendant Barnes, Mailroom Supervisor. During the pertinent time period, Defendant Long was Assistant Director of the Division of Adult Institutions for the Missouri Department of Corrections. Although Plaintiff has been incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri since November 10, 2005 until the present, all of the alleged violations by Defendants occurred while he was incarcerated at Northeast and Moberly.

Plaintiff is a member of the Pentecostal Assemblies of the World Church, a Christian denomination, and is a minister ordained by the Universal Life Ministries Church. Plaintiff believes that he must attend religious services whenever it is practical, as these services are an essential component of his faith. In his complaint, Plaintiff asserts that he attends religious services while incarcerated to celebrate his faith in a communal and supportive atmosphere. Plaintiff identifies activities of a "prayer and praise" service as tenets of the Apostolic Pentecostal faith beyond the typical activities of prayer, singing, preaching, and fellowship shared by other Christian denominations. According to Plaintiff, central Pentecostal activities include a testimonial service and an "altar call," where church members or those who wish to dedicate their lives to the Pentecostal faith can be surrounded by others in a "laying of hands" or be anointed with oil. Plaintiff claims that while he was incarcerated at Northeast, the prison staff restricted his religious service attendance to one service per week.

Upon entering Northeast, Plaintiff designated his religious affiliation as Apostolic Pentecostal, which fell under the category of Christian General. The policy and procedure manual provided for a maximum of two (2) weekly group gatherings per week, for each religion accommodated for group meetings. Further, provisions were made for offenders to attend

services of other religious communities through the use of a guest pass. The manual gives the Chaplain and other prison staff discretion to limit group worship in the interest of institutional safety and security. Plaintiff was limited to attending a once-weekly Apostolic Pentecostal service lasting one and a half hours. Plaintiff alleges that there were numerous other Christian services available, and that Plaintiff never saw more than thirty inmates attending Christian services in the chapel, which has a seating capacity of seventy.

Plaintiff's wife is also a minister with the Pentecostal Assemblies of the World Church. During Plaintiff's incarceration, Plaintiff's wife communicates with Plaintiff through the U.S. Mail, and often includes scripture passages from the Bible in her mailings to Plaintiff. Plaintiff claims that the prison staff at Northeast and Moberly prevented him from receiving letters from his wife that included more than five pages of religious material. Plaintiff claims that he was allowed to receive letters of personal correspondence longer than five (5) pages in length, and that other inmates received newspaper and magazine enclosures longer than five pages in length.

## II. PROCEDURAL HISTORY

On October 13, 2004, Plaintiff filed suit against all named Defendants, with the exception of Defendant Blattel-Dunseith, under 42 U.S.C. §1983,[2] alleging violations of his constitutional rights, and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc-3. On February 27, 2006, Plaintiff filed a motion to amend his complaint. This motion was granted on March 30, 2006; Defendants Wendy Alexander and Terry Burns were

---

[2]42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"

added as named Defendants, and Defendant Barnhart was dismissed. On June 23, 2006, after previously appearing on this issue pro se, Plaintiff was appointed counsel. On August 4, 2006, Plaintiff filed his First Amended Complaint. The Plaintiff's First Amended Complaint contains seven counts. Counts I through IV involve the staff at Northeast: Count I claims violation of Plaintiff's First Amendment right to freedom of religious expression; Count II claims violation of Plaintiff's right to freedom of expression under RLUIPA; Count III claims violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment; and Count IV claims a Fourteenth Amendment Equal Protection violation. Counts V through VII involve the staff at Moberly: Count V claims violation of Plaintiff's First Amendment right to receive mail; Count VI claims violation of Plaintiff's right under RLUIPA to receive mail; and Count VII claims violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff's First Amended Complaint also introduced a new defendant, Sherry Blattel-Dunseith.

On December 14, 2006, the Court granted Plaintiff's Request for Leave to Amend his First Amended Complaint to dismiss Sherry Blattel-Dunseith as a Defendant. Further, the Court denied the remaining Defendants' Motion to Dismiss all counts for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Through the appropriate grievance process, Plaintiff exhausted his administrative remedies with respect to the allegations of religious service attendance and receipt of religious material by mail alleged in his Complaint. On May 18, 2007, Defendants filed a Motion for Summary Judgment on Plaintiff's claim of religious discrimination under 42 U.S.C. §1983 and RLUIPA. The Court will address Defendants' motion at this time.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986).  The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1).  "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party."  *Id*.  Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  Once this burden is discharged, if the record does in fact bear out that no genuine

dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## IV.   DISCUSSION

Plaintiff's First Amended Complaint seeks a declaratory judgment, compensatory damages, and punitive damages, alleging multiple claims under 42 U.S.C. §1983 and one claim under RLUIPA. The Court will fully address the claims under Section 1983 before addressing the claims under RLUIPA.

### A.  Section 1983

Section 1983 is "merely a vehicle for seeking a federal remedy for violations of federally protected rights. *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987). To determine whether a violation occurred under §1983, two essential elements must be present: 1) the conduct complained of was committed by a person acting under color of state law; and 2) the conduct

complained of deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999). Where multiple constitutional violations are alleged, a court must analyze plaintiff's allegations under the most "explicit source of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

There is no question that all Defendants were employees of the state, and that the actions complained of were done under color of state law. Therefore, the Court will focus its discussion on the second requirement; whether the conduct complained of deprived Plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Defendants assert that they are entitled to qualified immunity because Plaintiff cannot show that Defendants' alleged acts were clearly unconstitutional. Government officials performing discretionary functions are shielded from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cole v. Bone,* 993 F.2d 1328, 1332 (8th Cir. 1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has described qualified immunity as comprised of both a subjective and objective element. *Harlow*, 457 U.S. at 815. Stating these requirements in the negative, the Supreme Court held that "qualified immunity would be defeated if an official *knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury." *Id.* (emphasis in original) (internal quotation omitted). The Eighth Circuit has articulated a two part inquiry in determining whether a defendant's actions, taken within the sphere of official

responsibility, are protected by qualified immunity. *Andrews v. Fuoss*, 417 F.3d 813, 816 (8th Cir. 2005). The Court first considers "the threshold question of whether, construed in the light most favorable to the party asserting the injury, the facts alleged show the officers' conduct violated a constitutional right." *Andrews*, 417 F.3d at 816. If not, the Court will undertake no further inquiry concerning qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the Court determines that the plaintiff has shown a violation of a constitutional right, the second part of the inquiry is whether the constitutional right was clearly established. *See id.* The Court will address each alleged violation of a constitutional right, in turn.[3]

### 1. First Amendment

The Court first considers whether the evidence, taken in a light most favorable to the Plaintiff, shows a violation of a right under the First Amendment[4] to freely exercise one's religion. *Andrews*, 417 F.3d at 816. In Count One, Plaintiff claims that Defendants Alexander, Long, Moore, and Riordan, under color of state law, violated his First Amendment right by limiting his attendance to one religious service per week and by barring him from receiving mail containing more than five enclosed pages of religious material at Northeast. In Count Five against

---

[3]The Court will address the allegations by Plaintiff of a violation of his right to free exercise of religion under the first amendment against all individuals at both institutions, as the same facts are alleged against each.

[4]The First Amendment states:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I.

Defendants Barnes, Gammon, and Anderson, Plaintiff claims his right to exercise religion was violated by a policy at Moberly, which similarly barred receipt of mail containing more than five enclosed pages of religious material. Plaintiff argues that the restrictions served no legitimate government interests, because there was ample seating space in the Northeast chapel during Christian services and because both Northeast and Moberly allowed inmates to receive non-religious letters longer than five pages in length. Defendants argue that, even if Plaintiff's religious beliefs are sincerely held, he has failed to establish that attendance of other denominational services and receipt of religious material via mail are fundamental to the exercise of his religion.

The Supreme Court has established a threshold requirement of sincerity before courts consider whether a prison regulation infringes on a religious belief such that it violates the free exercise clause of the First Amendment. *United States v. Sieger*, 380 U.S. 163, 185 (1964). Further, the Eighth Circuit requires an inmate to show "that the challenged regulation infringes upon that belief." *Iron Eyes v. Henry*, 907 F.2d 810, 813 (8th Cir. 1990). If these threshold showings are made, the prison regulation which infringes an inmate's constitutional rights, "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The burden falls on a plaintiff to establish what the practice of his or her religion requires beyond scant or conclusory allegations. *See Bettis v. Delo*, 14 F.3d 22, 23 (8th Cir. 1994). The First Amendment only protects the exercise of religious beliefs or rituals "based on a teaching of [one's] religion." *Goff v. Graves,* 362 F.3d 543, 547 (8th Cir. 2004). Furthermore, because "incarceration necessarily, and constitutionally, entails restrictions, discomforts, and a loss of

privileges that complete freedom accords," a prisoner has no constitutional right to continue every religious exercise that he or she traditionally engaged in before incarceration, nor to have those religious exercises be of the same quality or frequency as before incarceration. *Rhodes v. Chapman*, 452 U.S. 337 (1981).

Here, Defendants offer no evidence to suggest that Plaintiff, an ordained minister, is insincere in professing the religious beliefs which he believes are controverted by the regulations at issue here. Therefore, Plaintiff meets the threshold sincerity requirement. *See Sieger,* 380 U.S. at 185. Defendants have offered no alternative motivation, other than infringement on sincere religious belief, for Plaintiff to challenge the regulations at issue. Because Plaintiff has manifested a sincere desire to attend more Christian worship services and receive longer religious mail enclosures, the Court finds that the regulations at issue actually infringes his sincerely held religious beliefs. *See Iron Eyes,* 907 F.2d at 813.

Once the two preliminary requirements have been satisfied, the Court must address the reasonableness of the restrictions. *Turner*, 482 U.S. at 89-91. In determining reasonableness, relevant factors include:

> (1) whether there is a valid, rational connection between the regulation and a legitimate and neutral government objective put forward to justify the regulation; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to prison inmates; (3) what impact accommodation of the asserted constitutional right will have on (a) guards and other inmates and (b) the allocation of prison resources generally; and (4) whether there are ready, obvious, easy alternatives to the challenged regulation.

*Id.*

### a. Attendance of Group Worship Services

The Court will first address Plaintiff's claims regarding attendance of group worship

services before turning to Plaintiff's claims regarding receipt of religious mail enclosures. Applying the first factor under *Turner*, 482 U.S. at 89-91, the Court must find that the attendance and mail regulations at issue were rational and "reasonably related to legitimate penological interests." *Goff,* 362 F.3d at 548. The Court accords substantial deference to "the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). At Northeast, Chaplain Barnhart was charged with implementing policies to balance institutional safety with constitutionally protected religious activity. The Court defers to the Chaplain's generally applicable regulation limiting each inmate to two group gatherings per week. In the Defendants' experience, the risks of violence, unrest, injury and property damage are elevated when activity halls are crowded. *See Murphy v. Mo. Dept. Of Corrections,* 372 F.3d 979, 983 (8th Cir. 2004) ("[S]ecurity is particularly important in dealing with group activities because of the potential for riots and the extensive damage resulting therefrom."). The Northeast chapel had a very limited seating capacity given the large population of the institution. Plaintiff contends that because he never saw more than thirty (30) inmates attending Christian services at Northeast, leaving empty seats, and because inmates at Northeast were given unlimited guest passes, Defendants' proffered interest in security is undermined. However, Plaintiff does not create a genuine issue of material fact as to whether the attendance limit served a legitimate interest because Plaintiff had no knowledge of attendance levels at the Christian services he did not attend, which are precisely the services at issue here. Further, the Court defers to Defendants' decision to limit attendance to levels, even if Defendants decided to set those limits well below the maximum seating capacity.

The second factor under *Turner*, is whether an inmate has alternative means of exercising his or her religion. 482 U.S. at 89-91. Plaintiff asserts that central components of his Pentecostal faith include fellowship, Bible study, and praising prayer. The Court assumes, for purposes of summary judgment, that Plaintiff's belief in the need for group worship is genuine. *See Murphy,* 372 F.3d at 983 (8th Cir. 2004). However, Plaintiff has not shown that he has been denied the right of access to group worship, but rather that such access is limited.[5] Therefore, the evidence is clear that Plaintiff had sufficient means to practice his belief in group worship.

Under the third factor, if Defendants accommodated Plaintiff's demands, for more frequent religious service attendance by exempting him from the policy guidelines, Defendants would undermine the general applicability of their legitimately promulgated safety regulations. *Turner*, 482 U.S. at 89-91. Furthermore, a general erosion of the regulations would strain institutional resources because more staff persons would be needed to monitor inmates during services. As addressed above, the Court defers to Defendants' determination that an increase in religious service attendance would threaten both guards and inmates with a higher risk of violence, disorder, or property destruction.

The final factor under *Turner*, is whether easy alternatives to the challenged regulation exist. 482 U.S. at 89-91 Prison officials are not required to adopt the least restrictive alternative to accommodate a prisoner's constitutional complaint. *Id*. at 91. Therefore, while Plaintiff and the Court can envisage a number of other, more speech-protective methods by which Defendants

---

[5] The Court notes that Plaintiff could attend a secondary weekly service, time permitting. Plaintiff could also obtain unlimited guest passes for other services, and attend weekly fellowship and chaplain services, time permitting. Plaintiff only worked for 30 minutes per day, which made scheduling conflicts with these services highly unlikely.

could accommodate Plaintiff's sincerely held religious belief, the Court defers to Defendants on their choice of means to further legitimate penological interests. Plaintiff has offered the Court no alternative to the regulations that would accommodate prisoners' constitutional rights at a *de minimis* cost to valid penological interests.

### b. Receipt of Religious Mail Enclosures[6]

The Court next addresses the receipt of mail enclosure, using the same factors articulated above. *See Turner*, 482 U.S. at 89-91. Under the first factor, the Court finds that Defendants have a legitimate interest in screening all inmate correspondence for illegal communication. The Supreme Court has found that screening incoming mail is reasonably related to penological interests, where distinctions are based on implications for prison order and security. *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). Defendants testified that mail was screened in the interest of intercepting contraband and prohibited communication, such as escape plans. The regulation that Plaintiff challenges, a five-page limit on enclosures, was content-neutral and, as Defendants testified, was applied in order to reduce the amount of time prison staff were required to screen mail. Under the Second factor, Plaintiff has failed to show that his wife's communications, which contained scriptural passages, could not be accommodated in any other manner. Specifically, Plaintiff has failed to show that his wife could not effectuate that component of his faith by dividing her mail enclosures to him into five-page increments, or by citing to Bible passages for his review rather than sending verbatim copies to Plaintiff. Under the third factor, if Defendants accommodated Plaintiff's demands, for more lengthy mail enclosures

---

[6]Plaintiff alleges that this conduct violates both his first amendment right to the free exercise of religion, as well as his free exercise rights. The Court will address all arguments in this section.

by exempting him, Defendants would undermine the general applicability of their legitimately promulgated safety regulations. *Turner*, 482 U.S. at 89-91. Furthermore, a general erosion of the regulations would strain institutional resources because more staff persons would be needed to screen mail enclosures. As addressed above, the Court defers to Defendants' determination that an increase in mail enclosure volume would threaten both guards and inmates with a higher risk of violence, disorder, or property destruction. Lastly, as concluded above, under the fourth factor, Plaintiff has offered the Court no alternative to the regulations that would accommodate prisoners' constitutional rights at a *de minimis* cost to valid penological interests. *Id.* The Court concludes that Plaintiff has failed to provide sufficient evidence to support a claim under the first amendment of a violation of his right to the free exercise of religion on the basis of limiting his mail enclosures.

Plaintiff also alleges that the limitation on his mail violated his free speech rights under the First Amendment. The Supreme Court has recognized that "[i]nmates clearly retain protections afforded by the First Amendment." *O'Lane v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The addressee as well as the sender of direct personal correspondence is protected by the First Amendment against unjustified governmental interference with communication. *Procunier v. Martinez*, 416 U.S. 396, 408-09 (1974) (citing *Lamont v. Postmaster General*, 381 U.S. 301 (1965). The Court determines the constitutionality of prison staff's scrutiny of incoming and outgoing non-legal[7] mail by evaluating whether "the regulation [is] reasonably related to a

---

[7]The First Amendment affords greater protection to an inmate's confidential communications between himself and his counsel of record. *See Foster v. Helling*, 210 F.3d 378 (8th Cir. 2000) ("Prisoners retain their First Amendment rights of sending and receiving mail, and prison officials may not read inmates' legal mail." (citing *Thongvanh v. Thalacker*, 17 F.3d 256, 258-59 (8th Cir. 1994)).

14

legitimate penological interest." *Thongvanh v. Thalacker*, 17 F.3d 256, 258-59 (8th Cir. 1994).

As explained above, application of the first factor from *Turner*, 482 U.S. at 89-91, leads the Court to conclude that the restrictions on Plaintiff's receipt of mail were reasonably related to legitimate penological interests in institutional safety and efficiency. Therefore, the Court concludes that Defendants' motion for summary judgment as to Counts I and V of Plaintiff's complaint is granted.

### 2. Eighth Amendment- Cruel and Unusual Punishment

As stated above, the first inquiry to be made by the Court under a qualified immunity analysis is whether the evidence, taken in a light most favorable to the plaintiff, shows a violation of a right under the Eighth Amendment to be free from cruel and unusual punishment. *Andrews*, 417 F.3d at 816. In Count Three, Plaintiff claims that Defendants Moore and Riordan imposed cruel and unusual punishment under the Eighth Amendment[8] by restriction of his religious service attendance and receipt of mail enclosures at Northeast. In Count Seven, Plaintiff claims that Defendants Banes, Gammon, and Anderson also imposed cruel and unusual punishment at Moberly by restricting his receipt of mail enclosures. Defendants argue that Plaintiff has failed to show that the policies were implemented with the requisite punitive intent.

To prevail on an Eighth Amendment claim, an incarcerated plaintiff must show a serious deprivation of 'the minimal civilized measure of life's necessities.'" *Key v. McKinney,* 176 F.3d 1083, 1086 (8th Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A plaintiff must further show "deliberate indifference" to his health or safety on the part of corrections officials

---

[8]"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

responsible for the deprivation. *Wilson*, 501 U.S. at 301-03. *See also Key*, 176 F.3d at 1086. (Offending conduct must be "wanton."). A prisoner can survive summary judgment on the issue of deliberate indifference by showing that a prison official was subjectively aware of an obvious risk to the prisoner, and disregarded that risk. *Farmer v. Brennan*, 522 U.S. 825 (1994). The Eighth Circuit has held that mere deprivation of access to religious services does not violate the Eighth Amendment because it does not "inflict unnecessary or wanton inflictions of pain, nor [does it] involve 'life's necessities,' such as water, food, or shelter." *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (Thirty-seven day isolation without contact visitation or religious services did not violate Eighth Amendment.).

Plaintiff's Eighth Amendment claim fails because he has not presented evidence that he was denied access to life's necessities. Therefore, Defendants' motion for summary judgment on Counts Three and Seven of Plaintiff's Second Amended Complaint is granted.

### 3. Fourteenth Amendment- Equal Protection Violation

As stated above, the first inquiry to be made by the Court under a qualified immunity analysis is whether the evidence, taken in a light most favorable to the plaintiff, shows a violation of a right under the Fourteenth Amendment[9] to equal protection of the law. *Andrews*, 417 F.3d at

---

[9]The Fourteenth Amendment states:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction equal protection of the laws.

U.S. CONST. amend. XIV.

816.  In Count Four, Plaintiff claims that Defendants Moore and Reardon violated his right to

equal protection under the Fourteenth Amendment by allowing similarly situated inmates of other

religious faiths to attend several religious services per week at Northeast.  Defendants argue that,

while some religious groups may have had more services to choose from than others, inmates of

all faiths were limited to two weekly services.

To prevail on an Equal Protection claim, an incarcerated plaintiff "must show that he is

treated differently than a similarly situated class of inmates, that the different treatment burdens

one of his fundamental rights, and that the different treatment bears no rational relation to any

legitimate penal interest." *Murphy*, 372 F.2d at 984.  Conclusory affidavits, standing alone,

cannot create a genuine issue of material fact precluding summary judgment. *Rose-Maston v.

NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998).

Here, regulations on Plaintiff's access to religious worship and scriptural material

implicated fundamental First Amendment rights.  If the regulations were applied unequally,

Defendants' legitimate penological interest in promoting general institutional security and

efficiency would be disjoined.  Plaintiff has failed to raise a genuine issue of material fact because

he has not proffered any evidence of unequal policy implementation or regulation enforcement

other than his own unsubstantiated testimony that he was not informed of the guest pass policy at

Northeast. *Rose-Maston*, 133 F.3d at 1109.  Therefore, the Court concludes that Defendants

enforced their regulations consistently, and did not violate Plaintiff's right to equal protection.

Since the Court finds that Plaintiff has failed to provide sufficient evidence to support a claim

under the Fourteenth Amendment, it is unnecessary to address the second step of the qualified

immunity analysis.  Therefore, Defendants' motion for summary judgment on Count Four of

Plaintiff's First Amended Complaint is granted.

**B. RLUIPA**

In Count Two, Plaintiff claims that Defendants Moore and Reardon violated his right under RLUIPA to be free from imposition of substantial burdens on religious expression while incarcerated by restricting his weekly religious service attendance and restricting the length of mail enclosures at Northeast. In Count Six, Plaintiff claims that Defendants Barnes, Gammon, and Anderson violated the same right by restricting the length of mail enclosures at Moberly. Defendants argue that any burden was in furtherance of compelling governmental interests in safety and was the least restrictive means of furthering that interest.

Incarcerated persons have a statutory right to practice the religion of their choice pursuant to RLUIPA. The strict level of scrutiny under RLUIPA affords prisoners more protection against religious infringement than the rational basis analysis under the First Amendment. *Cutter v. Wilkinson*, 544 U.S. 709 (2005). However, RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id.* at 722.

RLUIPA states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc-1(a).[10]

To prevail in his claim under RLUIPA, Plaintiff must demonstrate a substantial burden on

_____

[10]RLUIPA applies to penal institutions that receive federal financial assistance, or to those where the "substantial burden" on religious exercise affects interstate or foreign commerce. Both Northeast and Moberly receive federal funding.

religious exercise.  *Id.*  The Supreme Court finds a substantial burden on religious exercise where a person is required to "choose between following the precepts of [his] religion and forfeiting benefits, on the one hand, and abandoning the precepts of [his] religion... on the other hand." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).  The Eighth Circuit articulates "substantial burden" as a government policy that "significantly inhibit[s]" conduct or expression of a "central tenet" of religious belief.  *Murphy,* 372 F.3d at 988.  If Plaintiff can produce prima facie evidence that Defendants imposed a substantial burden on his religious exercise, the burden shifts to Defendants to demonstrate that the challenged regulations further a compelling government interest by the least restrictive means.  42 U.S.C. §200cc-2(b).  A challenged prison regulation fails RLUIPA scrutiny if it was "inadequately formulated ... grounded on mere speculation, exaggerated fears, or post-hoc rationalizations."  *Murphy*, 372 F.3d at 988.

Here, Plaintiff argues that he has been denied sufficient opportunity to participate in group worship and receive scriptural correspondence.  The Court will first address the group worship claim.  Plaintiff identifies tenets of the Apostolic Pentecostal faith by describing components of a "prayer and praise" service beyond the typical activities of prayer, singing, preaching, and fellowship shared by other Christian services at Northeast.  Since other Christian services lacked a testimonial service and an altar call, among other central Pentecostal exercises, Defendants' attendance restriction did not inhibit Plaintiff from exercising the tenets that set his faith apart.  Further, the Court finds the restriction did not *significantly* inhibit Plaintiff in his ability to exercise general Christian tenets or uniquely Pentecostal tenets, given the fact that he was allowed one and a half hours of group worship every week.  *See Weir v. Nix*, 114 F.3d 817, 821 (8th Cir. 1997) (Prison policy limiting inmates to three hours of group worship and two hours of

unstructured devotional time did not significantly inhibit First Amendment rights). Plaintiff neither alleges in his amended complaint, nor demonstrates with supporting affidavits, that his religious exercise ever became impracticable, that he was forced to abandon the precepts of the Pentecostal religion, or that he was forced to act in a way that violates sincerely held religious beliefs. As explained above, the record demonstrates that Plaintiff had sufficient opportunity to engage in fellowship, bible study, and praising prayer, despite Defendants' imposition of the regulations at issue. Therefore, Plaintiff has failed to show prima facie evidence that the attendance requirement imposed a substantial burden under RLUIPA.

The Court will now address the scriptural correspondence claim. In his amended complaint, supporting declaration, and deposition testimony, Plaintiff professes a sincere belief that he needs to receive scriptural correspondence from his wife. However, Plaintiff fails to show that such receipt is a central precept or tenet of the Apostolic Pentecostal faith. While the page limit on mail enclosures may have significantly constricted an exercise of faith to which Plaintiff had become accustomed at other penal institutions, it did not significantly inhibit any identifiable precept or tenet of the faith to which Plaintiff subscribes. Therefore, Plaintiff has failed to make a prima facie case for substantial burden under RLUIPA.

Since Plaintiff fails to make a prima facie case, the Court need not address the question of whether the Defendants employed the least restrictive means of furthering government interests. Alternatively, the regulations at issue here were promulgated in the compelling interests of institutional safety and efficiency, as explained above. The Court, applying the factors from *Murphy*, 482 U.S. at 89-91, defers to Defendants' group worship attendance and mail enclosure regulations because they were proactive policy determinations formulated due to legitimate fears

of staff misallocation, crowd disturbance, violence, escape, and unrest. The regulations were direct responses to the "inordinately difficult task of operating a prison." *Quinn v. Nix*, 983 F.2d 115, 118 (8th Cir. 1993). Since Plaintiff has not shown a substantial burden on the central exercise of his religion, he fails to raise a genuine issue of material fact as to his claim of an RLUIPA violation.

## V. CONCLUSION

The Court concludes that Plaintiff has not presented sufficient evidence to support a finding in his favor that his rights to free exercise of religion and free communication under the First Amendment, freedom from cruel and unusual punishment under the Eighth Amendment, or entitlement to equal protection of the laws under the Fourteenth Amendment were violated when Defendants subjected him to regulations limiting his attendance at religious services and receipt of mail enclosures. As Plaintiff has failed to show a constitutional violation, Defendants are entitled to qualified immunity. Therefore, Defendants are entitled to summary judgment on Plaintiff's claims for equitable relief and damages pursuant to 42 U.S.C. §1983 for violations of constitutional rights. Additionally, since Plaintiff has failed to prove a substantial burden on the exercise of central tenets or precepts of the Apostolic Pentecostal faith, Defendants are entitled to summary judgment on Plaintiff's claim for equitable relief under RLUIPA, 42 U.S.C. §2000cc-3. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #84]

is **GRANTED**.

Dated this <u>13th</u> day of <u>December</u>, 2007.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE